25-4004, United States v. Power-Escobar. Counsel for the appellant, if you would make your appearance and proceed, please. Thank you, Your Honor. May it please the Court, Aaron Clark for Ms. Power-Escobar this morning. As we've noted in our briefing, the District Court made three errors here in calculating Ms. Power-Escobar's sentencing guidelines range, all of which require remand here. Two of those errors can be handled under the fact that the District Court failed to make particularized findings. It miscalculated her base offense level under 2S1.1a2 by attributing to her the laundered funds of others in total over $190,000. And it also improperly applied a four-level enhancement to her for being in the business of laundering funds. Again, predominantly by applying to her all of the transactions that are set forth in the pre-sentence report that were made by others without making the particularized findings necessary. Well, you anticipated one of my questions, and that question relates to you said that two of the allegations could be alluded, could be traced back to this failure to make the particularized findings. So I take it that you accept the premise that this, the one adjustment related to knowledge or belief that the laundered funds were tied to narcotics, that that offense, that adjustment stands alone. In other words, that we could conceivably be in a situation where that adjustment could be affirmed, the court's adjustment on that could be affirmed, even if we reversed on the other two issues, right? The other two. Yes, I have to acknowledge we're looking at different facts in applying those. We're looking at essentially clear error in the district courts applying the six-level enhancement for her knowledge of belief that the laundered funds were narcotics proceeds. Isn't there plenty of evidence of that? I mean, she admitted that she knew the funds were obtained, and she also admitted that the government can likely prove they were proceeds of drug trafficking. And then there's evidence that she sat in a car while a drug dealer made multiple sales to various cars. I mean, I'm having a little trouble finding what the problem is with enhancement. The problem with that enhancement, Your Honor, is that there is nothing directly tying her to narcotics trafficking or knowledge of narcotics trafficking, even what the court just said. There's nothing tying her to trafficking herself, but I would take issue that there's no evidence of knowledge of narcotics trafficking. I mean, what did she think the guy was doing when he's sitting in a car with her and every car that comes by, he goes out and has a quick transaction and then comes back? Well, I would say, Your Honor, they did not. This is where I think the government's argument here is making some positions here. What the evidence that was put before the court is that Mr. Ruiz Aguilar got out of his car and in his car repeatedly in movements that were consistent with drug trafficking. There isn't actually any drug trafficking that was tied to that. And there could be a host of other explanations for it. She does acknowledge in her plea agreement that, yes, we acknowledged at the time that the court or that the government could prove that these were the proceeds of narcotics trafficking. But we have to be careful about hindsight bias and applying what she knew at the time she entered her plea to what was happening at the time that she was engaged in this money laundering business with others. But, I mean, I take the court's point there. The government has put forward a number of pieces of evidence that don't directly tie her to knowledge of narcotics or to narcotics trafficking. It seems to impute knowledge by association with narcotics traffickers. But I think that's where that's where we have the real difficulty with the application of that enhancement is there's nothing directly that shows that she knew that this was drug trafficking and the government should have had to prove more there. That's the probable cause standard, isn't it? Yeah, preponderance of the evidence. I'm sorry. I'm sorry. I'm on the wrong. Mr. Clark, on this particularized findings point, were you required to raise that before the court? Well, first, yes, we did raise it before the district court, your honor, in the objections that we filed. No, no, no, no, no, no. The objections, they were objections to discrete attribution issues. That is very different than the question of whether one has a distinct obligation to make particularized findings on those three factors, you know, scope of joint undertaking activity, whether it was reasonably perceivable, all those things. Those are three discrete things that the guidelines speak of. And you can just take Ellis, for example, in pointing out that that is an entirely discrete species of error apart from the objections that you raised. And I'm not saying you had to. I'm asking you whether you had to raise that below. Well, no, your honor, I did not have to raise it below because I think in one of the other cases that that actually, your honor, was a part of it was it was before your honor on plain error review. They didn't. Well, Ellis was one. And there was Figueroa as well. And both in and Figueroa. Exactly. They didn't have to raise it. And so I just want to get clear for the record purposes, whether that distinct issue was raised. But I don't think as a matter of law, you did have to raise proceed. I don't think I did, your honor. But also, we specifically objected to that enhancement by also noting that there were no findings of reasonable foreseeability in making that enhancement. And in response to that, the district court just denied the objection and found the record complete enough. So we didn't think you raised it. We would be on plain error, right? Yes, your honor. If I if the district if we fail to preserve that district court level, the court would be reviewing that for plain error at this point. Yes. And I mean, can you meet that standard? I certainly think we could, your honor, especially with certainly with respect to the particularized findings issue, because there are no particularized findings here. Just coming back to what when we made the specific objection before the district court, the probation PSR is response specifically sites one B 1.3 a one B. But instead of even trying to make any of these particularized findings, what the PSR says is, quote, because it is clear to the probation officer that power Escobar, Ruiz Aguilar and Arita Lozano were working in conjunction with one another and commission of the offense of conviction. The total one hundred and ninety thousand six hundred thirty seven dollars should be applied to the defendant's guideline calculation. That finding, your honors, if we can call it that, is that the three of these people were working in conjunction with one another. And that doesn't seem to be saying much more than what is required under the Tenth Circuit to prove that there was a conspiracy, namely that there was interdependence among the members of the conspiracy, which is one of the necessary elements here. So the court neither in in Ellis, as Judge Holmes pointed out, the court ends up looking to the PSR and the district court's adoption of the findings and saying, yes, there were particularized findings made by the district court. But here it's not made by none of the findings are made by the court nor in the in the pre sentence report. So we're left without any finding on reasonable foreseeability. We're not even left with a finding on the scope of the jointly undertaken activity, and we're not left with any finding on whether all of these deposits were made in furtherance of the criminal activity. Mr. Clark, can I get a sense of how this proceeded in terms of the evidence that the district court considered? You mentioned the government had submitted some evidence. But as I read the transcript of the sentencing hearing, the sentencing judge said that he reviewed the pre sentence report and the sentencing memorandum. Was there any other evidence that was presented to the court? Yes, your honor, in that in our objections, we also submitted one of the reports that believe it was by a DEA agent that helped, we thought, support our objections. But otherwise, there was no testimony taken. We we'd it was all contained within the PSR and those those documents. And then as I read the PSR, the objections are made. There's an addendum where probation officer files responses, but I did not see maybe I missed the government's response that may include evidence to support their position. The court's right. The government did not submit any evidence in support of those positions. It just filed a sentencing memorandum that that makes some allegations and connections, but it doesn't. It didn't submit any further evidence and support. All right. And then as I read your objections, you challenge the conclusions that the defendant was a leader as for in knowledge of drug trafficking organization. However, you did not challenge the individual transactions or observances in paragraph 15 that chart. So those facts are fair game for the court because they weren't challenged. Is that accurate? You agree with that? I would agree, your honor, that we did not challenge that those transactions happened now and we didn't we didn't take issue with the fact she admitted to having been part of a conspiracy with at least one other person where I think we disagreed several times was that all of those transactions need should be properly attributed to Miss Power Escobar because the findings were not made. The connections were not made. The deposits were not made in her name. They were made in her her the leader's name, Arita Lozano. And the district court made a finding to say that Miss Power Escobar was a co-leader. And I think it was an important part of this enterprise. If we were to accept those findings, do all of your arguments then do you lose in the rest of your arguments because being a leader implies the elements of jointly undertaking criminal activity? That's certainly what the government is arguing, your honor, but I don't think so. No. And especially in a situation here where we've got the government conceding in its brief that she was not the leader of the conspiracy. Arita Lozano was the leader of the conspiracy. The government just acknowledges that she had a degree of leadership. But I don't think that the can properly say that that finding obviates the need to make the three particularized findings, particularly with foreseeability. There has been no finding, your honor, that she was aware of all of the other transactions that were happening when she's not around. So I don't think that it suffices to just say she's a co-leader of the operation, which itself is not defined by probation or by the court. And that covers everything. There's certainly no support for that that I've seen anywhere in the case law. What about that she was in the business of laundering funds? Did there have to be particularized findings for that? Well, your honor, there did in this case, because it seems so important to both probation and to the government that they attribute all 27 transactions to Miss Power Escobar in deciding that she was in the business of laundering funds. No one but Miss Power Escobar tried to address that factor head on, only considering her six transactions. But if you want to apply the conduct of others to her under 1B1.3, you need to make those particularized findings to do so. We don't have any, at least I couldn't find any case law from this circuit interpreting that in the business of laundering funds and what specifically is required. Did you find something I didn't find? If we had found something, your honor, that certainly would have been in both of our briefings, I'm sure. It's a relatively novel area, but I think that issue almost gets short circuited here, at least for now, because of the particularized findings issue and trying to attribute to her everybody's conduct. No, I get that. But let me just ask this. Let's assume that we were to accept the notion that it was in error to attribute all of these transactions to her. You still have the six transactions that basically she accepts that she did. Could we find on that particular adjustment harmless error by saying that, you know, even if the court erred in attributing all 27 to her, we think as a matter of law, it was sufficient that there were six? I think the court could, your honor. It's a fuzzy standard. It's totality of the I'm not saying that the court should make that finding. I don't think that that's warranted here, but I can't say that it would be outside the court's purview to do that. I mean, what I would say is there was no evidence that these deposits came from multiple sources. There was no evidence that she generated a substantial amount of revenue. And that's what that factor looks at as to whether she generated revenue. She doesn't have any prior money laundering convictions. And this was six transactions over the course of a nine-week period amounting to $26,000. In the survey of the case law that both parties put together, I don't see anyone saying that is in the business of laundering funds. Well, I appreciate your candor on the point and your elaboration on it. Very helpful. Anything else? All right. Thank you. Counselor of the government, we'll hear from you. May it please the court, Nathan Jack for the United States. I would like to begin with the argument about particularized findings, and I have three responses to that. First, the court here did make particularized findings. Where? Finding repeatedly that Paris Guevara was a co-leader in a three-person conspiracy is a particularized finding, as courts have found. And what court are you talking about? You look at Ellis, and Ellis, that's not what that is. I mean, in this particular case, the court said one sentence at the beginning that she is a co-leader in this conspiracy. It did not speak about scope of jointly engaged in activity. It did not speak of reasonable foreseeability. It did not speak of in furtherance. Where in the record of that sentencing transcript did she, did the court do those things? A few responses, your honor. First, the case log does not require courts to go line by line and specifically articulate using magic words all the factors for relevant conduct. What matters is the court makes particular findings to that defendant, tying that defendant to the conduct. And so we see in all the cases where the court may not use the word scope or may not use the word foreseeability, but its findings show that it is tied to that relevant conduct. And I don't know what case law, what case are you talking about? Because I note, and it is very significant to me, that when I look at your brief, and when you responded specifically to that point, you did not cite one 10th Circuit case, not one. You cited cases from other circuits, not from our circuit. And that's the only one for this purpose is that matters. So what case are you relying on from our circuit that would say that the court, just by saying that she was a co-leader, would be sufficient to cover the basis on the particularized findings that were required? I do think Ellis is a close case. And that leads to my second point here, that we have more than just the district court's finding about being a co-leader. We also have a very thorough PSR that specifically outlines all the evidence showing how Power Escobar was connected to the relevant conduct here. And I'll hit the pause button again. So you're saying that Ellis is your case. Is that what you're saying? That's the case that you would rely on from our circuit? Yes. And I will also point, I would like to point out that my friend has not identified any case showing the other ways where someone was found to be a leader, and it was sent back to the district court for failing to make particularized findings. In every case- Well, I'm saying that Ellis gives you a problem. And so if that's your case, then okay, you can have that case. But when you go beyond that, and you look at the PSR and note in the Figueroa-Lambrada case, the court said, okay, fine. Well, we'll look at the PSR as we did in Ellis. You can look at the PSR to see if the PSR will provide those particularized findings. What passage of the PSR do they speak about scope of jointly undertaken activity? Do they speak about in furtherance of beyond that one little recitation where the court did not go, I mean, the PSR probation officer did not go forward and attach them. I may have missed it. Tell me where that is. I would point your honor to response number one, where it talks about instructing Ruiz Aguilar. And again, it doesn't use magic words of, we find that this is within the scope. But when you instruct someone to do something, then obviously, and necessarily that conduct is within the scope of what you agreed to do. That conduct is foreseeable to what you do. I would point your honor to response number two. Again, the language is, it is clear to the probation officer that Power Escobar, Ruiz Aguilar and Arita Lozano were working in conjunction one with one another in the commission of defense of conviction. So again, that covers the scope. If you are working together, that means you are agreeing to that conduct. If you're- Would you still, I'm sorry, I didn't mean to talk over. Go ahead, please. And if you were working together, that means that that conduct is foreseeable to you. Again, it depends on what the conduct is. I mean, they're working together for purposes of a conspiracy. But then when you get down to how much of the transactions you get to attribute, or the amount of money that's laundered you get to attribute to this person we have held, it's not good enough to just have the general conspiracy. You need something more than that in the form of particularized findings. And I don't see them here. That is exactly what we have here though. Again, the finding that Power Escobar directed other co-conspirators means that she agreed to that activity. We don't have the magic words saying scope or saying foreseeability, but we have your particularized findings connecting Power Escobar to that conduct. She directed Ruiz Aguilar in this activity. Therefore, she agreed to it. It was within the scope of what she agreed to. It was foreseeable to her. That is enough for particularized finding. And again, I'd point, it is out of circuit, but it's very persuasive to the DC Circuit's opinion in Clark, where all they had there was that Clark was a leader. And we have a similar situation here, a three-person conspiracy, where Clark instructed two people to make a drug transaction. Those people were arrested and the court attributed all of the drugs recovered to Mr. Clark. And he argued on appeal, there were no proper findings here. There weren't particularized findings. And the court said, we, the district court found you to be a leader. That is enough because. With all due respect to the DC Circuit, we're not in the DC Circuit. And if you can tell me what in Ellis, what language in Ellis would support you saying that at least calling someone a leader is enough to create particularized findings. I didn't see it. I'm not relying on Ellis for that point, your honor. I point that there is no 10th circuit case in which the district court found that there was a leader. And this court reversed her amendment because there was lack of particularized findings. I point to Ellis to show that not only do we have the district court finding, but we also have a very thorough PSR that outlines exactly how Power Escobar directed Ruiz Aguilar, how she worked with Rita Lozano, and how that therefore means that the scope of that activity is attributable to her. Go ahead. Go ahead. I'm sorry. Go ahead. So you keep talking about the specific findings and I just want to make sure I understand this point because as I read the record, the defendant makes objections, many objections to the original PSR. And then we have this addendum where the probation officer who works for the court goes through and gives a response and even references some discovery. We have nothing from the government and my understanding is the government has submitted no evidence at all. And so when you're saying the findings, are you talking about the probation officer's findings? Because at that point, I guess I'm thinking of the rule 32 that says, you know, once the defendant objects and puts these facts at issue, the government has a burden. It doesn't say the probation officer has a burden. The government has the burden. So I'm trying to figure out when you keep talking about the findings, if you're talking about what the probation officer said, what the evidence the government submitted, which I think is none, or what the district court made in terms of findings. We did submit a sentencing memorandum, Your Honor, that outlined several pieces of evidence. But yes, the findings in the PSR are fair game. And the district court heavily relied on the PSR. It adopted the offense level. And as we learned in Ellis, that implies that it adopted those findings as well. So while it appeared in the addendum in the response, that still suffices as part of the district court's findings. And that's what we have here. Mr. Jack, could I just follow up on that for a second? Judge Federico's point, it seems to me, is well taken. I mean, isn't it in fact the case that when there are objections that are made, and these were fact-based objections, the government, the district court, we have cases that say, and I hope that you would confirm that this is your understanding. We have cases that say when such specific objections are made, that the court can't, it cannot accept the PSR as its findings. The government has an obligation to put on proof to support the PSR's findings. Is that not right? It says it can accept those findings without resolving those objections. And the court here clearly overruled those objections. Based upon what? The government did not present a sentencing memorandum. There was no hearing. There wasn't even evidence presented in addition to support the PSR's findings. There was, Your Honor. Again, the DEA analysis that my friend talked about was included in the PSR's analysis. The PSR looked at the evidence and made those responses. The district court looked at all the evidence and overruled those objections. The point is based upon what? I understand your point about the DEA presenting, you know, it's whatever, DEA 6 or whatever it did in that context. But the reality is, then we are, you know, if you look on the time continuum, that stuff happens. Then the PSR is produced. Then there are objections to the PSR. And at that juncture, that's when the rule would require something to happen, right? I mean, then, because that's where we are at that juncture, the court can't then just say, oh, well, you know, I looked at the PSR findings, and I like them, and I'm adopting them as my findings. At that juncture, something else has to happen, right? The PSR filed responses. The probation officer filed responses to those objections. That was based on evidence. The district court then overruled those objections. To the extent there's any qualms about whether the evidence actually supported that findings, those findings, that goes to clear error. That does not go to point of error. You said based upon evidence. Are you talking about new evidence or talking about the evidence that it already had? Essentially, the evidence that it already had, as well as the additional evidence of the DEA analysis of Power Escobar's specific communications with Ruiz Aguilar. So, from that, it found that Power Escobar directed Ruiz Aguilar in both drug activity and money laundering activity. In conjunction with the other evidence it had outlining the hundreds of phone calls and voice messages and text messages between the two, between Power Escobar loaning cars for Ruiz Aguilar to then make deposits. Let me ask you this. If we disagree with you, and we think there were not particularized findings here, would you agree we have to remand for resentencing? I would not, Your Honor. I would say that it's harmless errors. I believe my friend acknowledged, and maybe I misheard, but the evidence here is extensive. If all the court finds that there was a lack of particularized findings here, we would essentially go back to the district court to say, okay, yes, I docked all these specific things, and then we're in the same position as we are today. I understood the concession to be that we could find harmless error on the laundering with six transactions. I did not, and maybe I'm wrong, but I did not interpret that as a blanket, everything's harmless error. That is fair. I understand. I would argue that we do have harmless error here where the evidence is so extensive and shows Power Escobar's involvement in this conduct. My third point on the particularized findings that I would like to get to. You're essentially saying we can just go ahead and make the findings ourselves? No. Ideally, I would say that the PSR has all the findings, so you wouldn't need to make the findings yourselves. If the court finds that the district court failed to make those findings, then I would say this court can look to the findings that are located in the PSR. If it finds that the findings in the PSR are inadequate, yes, I can see that we would need to remand. But for my third point, which is the preservation issue, and Power Escobar did not raise this issue of particularized findings below. Below the objection was about sufficiency. I quote from the sentencing transcript, sorry, the objection is that the court considers her a co-leader of this drug trafficking cell as perplexing to us with the evidence that we have in this case. Again, the argument was that the evidence was insufficient to show that Power Escobar was a leader. That's the objective. And under Ellis and under Figueroa-Librada, did the defendant have to raise this issue? Yes. I think in Figueroa, the court reviewed for plain error. I think that shows an obligation to preserve this specific because it is an independent challenge to this evidence. So this is something that needs to be preserved. This is something that was not preserved. I recognize that the United States failed to outline this in the response brief and that an appellee can waive waiver. However, a party cannot waive the standard of review. Rule 54B outlines what the standard of review is, and that is true no matter what the parties concede to. And so this would then be reviewed for plain error. And given the dearth of 10th Circuit case law saying that a finding that someone was a leader is a lack of particularized findings, there is not binding case law in this circuit or settled case law. I think to the extent there is case law, it goes the other way. All the cases that court find where district court found that a defendant was a leader in a conspiracy, all of those have been upheld as having particularized findings. Ellis is a different story because there was nothing like that finding there. Let me get back to the fact that that finding was specifically objected to, and there wasn't a Rule 32 procedure after that objection. Correct, Your Honor. There wasn't. So the finding, the district court did make a specific finding on that. And again, the point is that there is no case law saying that that finding is inadequate. All the case law in the United States has gone the other way. And for that reason, there is no plain error here. I see my time is up, and I ask this court to affirm. Actually, Chief, can I ask one more question? Of course. Mr. Jack, the government's role in this procedure, as I understand it, was the sentencing memo. That's all that was submitted. And as I look at the date of that document, it's submitted on the same day as the defendant's sentencing memorandum. It includes a list of transactions or proffered facts. Two questions about that. Was there any evidence that supported those facts that was submitted to the court with the sentencing memo? I do not recall off the top of my head what was submitted. But I would note here that, as my friend has recognized the trial, the underlying facts are not in dispute. Okay. And so that—you may have answered my second question, which is, it lists all those transactions. Are those essentially mirrored transactions to the chart that's in paragraph 15 of the pre-sentence report? I believe so, yes. And again, none of those underlying facts are in dispute. The only dispute is whether that shows that Power Escobar was a co-leader in this three-person conspiracy. Thank you. All right. Case is submitted. Thank you, counsel.